**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Criminal Action No. 22-cr-00273-REB-JMC

UNITED STATES OF AMERICA,

      Plaintiff,

v.

KALEB ENGLISH,

      Defendant.

---

**ORDER OVERRULING OBJECTIONS TO**
**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Blackburn, J.**

      The matters before me are (1) the **Government's Objections to Magistrate Judge Order [ECF #36]** [#37],[1] filed February 10, 2023; and (2) **Defendant's Objection to Magistrate Judge Order** [#39], filed February 13, 2023.  I overrule the objections.

## I.  JURISDICTION

      I putatively have jurisdiction over this criminal case under 18 U.S.C. §§113(a)(2) (assault with intent to commit a felony), and 113(a)(4) (assault by striking, beating, or wounding), made applicable to defendant, an Indian, by virtue of 18 U.S.C. § 1153 (the Major Crimes Act).

---

[1] "[#37]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

## II.  STANDARD OF REVIEW

Federal Rule of Criminal Procedure 59(b)(1) authorizes a district court to refer to a United States magistrate judge "any matter that may dispose of a charge or defense" for recommendation.  A party may serve and file objections to any such dispositive order within fourteen days of the magistrate judge's recommendation.  FED. R. CRIM. P. 59(b)(2).  "The district judge must consider de novo any objection to the magistrate judge's recommendation." FED. R. CRIM. P. 59(b)(2).  *See also United States v. Doby*, 928 F.3d 1199, 1206 (10th Cir. 2019) (Rule 59 "derived in part from Federal Rule of Civil Procedure 72") (citation and internal quotation marks omitted).  Failure to file specific objections waives the right to review.  FED. R. CIV. P. 59(b)(2); *United States v. Goebel*, 959 F.3d 1259, 1265-66 (10th Cir. 2020).

Although the magistrate judge did not issue a recommendation in this case, the only reason he did not is because the parties filed their objections before he had an opportunity to do so.  I thus construe the magistrate judge's order vacating the change of plea hearing ([#36]) as a recommendation and apply the standards of Rule 59(b)(2).

## III.  ANALYSIS

On January 31, 2023, defendant Kaleb English filed a notice of disposition ([#28]).  The matter was referred conditionally to the United States Magistrate Judge that same day to conduct a change of plea hearing ([#29]).  After the parties' consented to the jurisdiction of the magistrate judge (*see* [#30]), this case was referred to the United States Magistrate Judge "for final determination as authorized by statute and rule and recommendation for those matters the magistrate judge may not finally determine"

([#31]).  The magistrate judge set a change of plea hearing for February 10 ([#32]).

However, after reviewing the parties' proposed plea agreement, he *sua sponte*

converted the change of plea hearing to a status conference on the ground that "[t]his

Court does not have jurisdiction over the charge in the proposed Plea Agreement"

([#36]).  These objections followed.

The indictment charges Mr. English with one count of assault with intent to

commit a felony, in violation of 18 U.S.C. § 113(a)(2), and one count of assault by

striking, beating, or wounding, in violation of 18 U.S.C. § 113(a)(4).  Federal jurisdiction

over these crimes was alleged under the Major Crimes Act, 18 U.S.C. § 1153, insofar

as Mr. English was alleged to be an Indian and the crimes allegedly occurred with the

exterior boundaries of the Southern Ute Indian Reservation in Indian Country.[2]  Under

the terms of the proposed plea agreement, Mr. English would plead guilty to a "lesser

included offense of the Indictment[,] Simple Assault in Indian Country, 18 U.S.C. §§

113(a)(5) and 1153" and receive a two-year term of supervised release with certain

conditions.  (**Motion App.**, Exh. 1 ¶ 1.A. at 1-2.)  Because the court lacks jurisdiction

over that crime, the magistrate judge properly refused to accept the plea.

Federal courts are not courts of general criminal jurisdiction.  Their authority to

adjudicate and punish crimes emanates solely from the Constitution, federal statute, or

treaty.  *See, e.g., United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259

---

[2]  I infer from the fact that jurisdiction is alleged under section 1153 that the alleged victim also is an Indian.  *Cf.* 18 U.S.C. § 1152 ("[T]he general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.).  *See United States v. Prentiss*, 206 F.3d 960, 968 (10th Cir. 2000) (section 1152 gives federal court jurisdiction over crimes between Indians and non-Indians occurring in Indian Country), *on reh'g en banc*, 256 F.3d 971 (10th Cir. 2001).

(1812).  Beyond this general jurisdictional limitation, federal jurisdiction over crimes committed by Indians is "anomalous . . . and of a complex character," due to the Indian tribes' status as quasi-sovereign governmental entities.  ***United States v. Kagama***, 118 U.S. 375, 381, 6 S.Ct. 1109, 1112, 30 L.Ed. 228 (1886).  ***See also United States v. Wheeler***, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978) (sovereignty of the Indian tribes with respect to criminal matters "is of a unique and limited character").  Although the sovereignty of the tribes is subject to "complete defeasance" by Congress, "until Congress acts, the tribes retain their existing sovereign powers," including their exclusive jurisdiction to punish crimes occurring within their borders. ***Wheeler***, 98 S.Ct. at 1086.

The Major Crimes Act represents one way in which Congress has permitted federal courts to exercise jurisdiction over crimes occurring on tribal lands which otherwise would be subject to the exclusive jurisdiction of the tribal courts.  Now codified at 18 U.S.C. § 1153, the Act gives federal courts exclusive federal jurisdiction over certain enumerated felonies occurring between Indians in Indian Country, including, specifically, "a felony assault under section 113."  18 U.S.C.A. § 1153(a).  ***See also United States v. Burch***, 169 F.3d 666, 669 (10th Cir. 1999).  Prosecution of crimes not expressly designated in section 1153, including, specifically, simple assault[3] – is reserved to the tribal courts, in recognition of their inherent sovereignty over such

---

[3]  Simple assault under section 113(a)(5) is Class B misdemeanor, and thus considered a petty offense.  ***See*** 18 U.S.C. §113(a)(5) (maximum six month prison sentence), § 3559(a)(7) (Class B misdemeanor is crime for which maximum term of imprisonment is six months or less), & § 19 (petty offenses include Class B misdemeanors).  ***See also United States v. Hollingsworth***, 783 F.3d 556, 558 & n.5 (5th Cir.), ***cert. denied***, 136 S.Ct. 535 (2015); ***Morgan v. United States***, 2014 WL 1871801 at *2 (D.S.D. May 8, 2014).

matters.  ***United States v. Antelope***, 430 U.S. 641, 643 n.1, 97 S.Ct. 1395, 1397 n.1, 51 L.Ed.2d 701 (1977); ***United States v. Quiver***, 241 U.S. 602, 700-01, 36 S.Ct. 699, 605-06, 60 L.Ed. 1196 (1916); ***United States v. Burch***, 169 F.3d 666, 668-69 (10th Cir. 1999).  ***See also United States v. Lara***, 541 U.S. 193, 199, 124 S.Ct. 1628, 1632-33, 158 L.Ed.2d 420 (2004) ("[25 U.S.C. § 1301] says that it 'recognize[s] and affirm[s]' in each tribe the 'inherent' tribal power . . . to prosecute nonmember Indians for misdemeanors.").

Despite this clear delineation of jurisdiction, both the government and Mr. English insist that because simple assault is a lesser included offense of the crimes with which Mr. English is charged,[4] failure to allow him to plead to that offense deprives him of a benefit to which non-Indians are entitled.[5]  They maintain the right to plead to this offense derives from a logical extension the United States Supreme Court's decision in ***Keeble v. United States***, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).  As neither the logic nor the actual language of ***Keeble*** support this argument, I reject it.

In ***Keeble***, the Supreme Court held it was error to refuse, for lack of federal jurisdiction, a defendant's request to include a jury instruction on simple assault where the defendant was charged with assault with intent to commit serious bodily injury.  ***Id.***,

---

[4]  The parties proffer neither argument nor authority to support a conclusion that simple assault is a lesser included offense of these crimes, and their failure to do so creates no obligation on this court to make arguments or search for authority on their behalf.  For purposes of resolving these objections only, I assume *arguendo* that simple assault is a lesser included offense of both assault with intent to commit a felony and assault by striking, beating, or wounding.

[5]  I note the parties do not contend that failure to accept this plea creates an invidious racial disparity or engenders a constitutional violation of due process or equal protection (or in any way other wise), nor would such an argument likely be successful.  ***See Weatherford v. Bursey***, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("[T]here is no constitutional right to plea bargain[.]"); ***Antelope***, 97 S.Ct. at 1398-99 (section 1153 not racially discriminatory).

93 S.Ct. at 1994.  Because a non-Indian defendant is entitled to a lesser included offense instruction where a rational jury could find him guilty of the lesser offense and acquit him of the greater, *id*. at 1995, and Major Crimes Act expressly provides that Indians charged thereunder "shall be tried in the same courts, and in the same manner, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States," *id.* at 1997 (quoting 18 U.S.C. § 3242), the Court held it could "hardly conclude that Congress intended to disqualify Indians from the benefits of a lesser offense instruction, when those benefits are made available to any non-Indian charged with the same offense," *id.*

Some federal circuit courts have extended the logic of *Keeble* to affirm a federal court's jurisdiction to impose sentence on a defendant found guilty at trial of a lesser included offense not within the ambit of the Major Crimes Act, reasoning that the *Keeble* Court could not have intended the giving of a lesser included offense instruction "to be an exercise in futility."  *Felicia v. United States*, 495 F.2d 353, 355 (8th Cir.), *cert. denied*, 95 S.Ct. 88 (1974).  *See United States v. Bowman*, 679 F.2d 798, 799-800 (9th Cir. 1982), *cert. denied*, 103 S.Ct. 1204 (1983); *United States v. John*, 587 F.2d 683, 685, 688 (5th Cir.), *cert. denied*, 99 S.Ct. 2036 (1979).  *See also United States v. Walkingeagle*, 974 F.2d 551, 553 (4th Cir. 1992) (court could sentence defendant on lesser included offense even though it acquitted him of greater offense prior to submitting case to jury, *cert. denied*, 113 S.Ct. 1818 (1993).

Nevertheless, as the parties acknowledge, there is a paucity of authority extending *Keeble* to the realm of plea bargaining.  The parties cite two unpublished

district court opinions in which courts have done so.[6]  In **United States v. Matheson**, 2015 WL 12866995 (D. Idaho Sept. 29, 2015), the court concluded that "depriving Indian defendants of the opportunity to plead to lesser charges violates the spirit of **Keeble** and runs afoul with [sic] Equal Protection."  **Id.** at *3, **vacated and remanded**, 669 Fed. Appx. 895 (9th Cir. 2016).[7]  That conclusion was purportedly based on the language of the Major Crimes Act itself:  "[I]n limited circumstances where simple assault is the lesser included crime of a crime charged pursuant to Section 1153, Section 1153 provides a basis of jurisdiction."  **Id.** at *2.

In **Morgan v. United States**, 2014 WL 1871861(D.S.D. May 8, 2014), the court concluded "the dictates of **Keebel** [sic] and of those federal appellate courts that have interpreted its scope and breadth compel this Court to conclude that [allowing defendant to plead guilty to lesser included offense not enumerated in the Major Crimes Act] would not be held to be an undue extension of federal authority."  **Id.** at *7 (footnote omitted). The decision appears to have been based in part on practical considerations – a concern that "forbidding the practice may force an Indian defendant  . . . to trial on MCA charges when he otherwise bargained for convictions of lesser offenses" – partly the

---

[6]  The government also attaches to its objections three plea agreements which it claims show "such pleas are common practice in many federal districts that routinely deal with Indian Country prosecutions."  (**Gov't Obj.** at 6.)  There are at least three problems with this argument.  As all three exhibits come from the District of South Dakota, these exhibits can hardly be said to represent the practice of "many" federal districts.  Even if the practice is common, I note the appeal waiver in all three plea agreements waives only non-jurisdictional issues.  (**Gov't Obj. App.**, Exh. 2 ¶ P at 8; Exh. 3 ¶ O at 8; Exh. 4 ¶ P at 7.)  Lastly, the government has presented neither evidence nor argument demonstrating that a federal district judge accepted these agreements, and I will not go hunt through the docket of another federal district court to attempt to confirm as much.

[7]  The Ninth Circuit vacated and remanded the case on the ground that the district court did not have jurisdiction to consider the defendant's challenge to his 12-year old conviction.  **Matheson**, 669 Fed. Appx. at 895.  Nevertheless, opinions which have been vacated may still be considered for their persuasive value.  **See State v. Shalala**, 42 F.3d 595, 599 n.5 (10th Cir.1994).

language of 18 U.S.C. § 3242 – which "explicitly states that [an Indian] defendant must be 'tried . . . in the same manner'" as a non-Indian – and partly on a belief that "fairness" required allowing such pleas.  *Id.*

Obviously, neither of these decisions is in any way binding or precedential in this district.  More importantly, neither is at all persuasive.  With respect, these decisions appear to be based on a misreading of *Keeble* and the cases extending it, as well as the statutes from which the claimed authority to accept such a plea derives.  More fundamentally, neither shows adequate deference to the exclusive jurisdiction of the tribal courts, which emanates from their inherent sovereign authority over all crimes not specifically enumerated in the Major Crimes Act.

I first point out that the decision in *Keeble* was grounded expressly in the language of 18 U.S.C. § 3242.  *See Keeble*, 93 S.Ct. at 1997.  That statute provides that Indians tried under the Major Crimes Act "shall be *tried* in the same courts, and in the same manner, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."  18 U.S.C. § 3242 (emphasis added). The Tenth Circuit specifically recognizes that "[t]he basis for the holding in *Keeble* [] was a construction of Rule 31(c)," *United States v. Cooper*, 812 F.2d 1283, 1285 (10th Cir. 1987), the rule of criminal trial procedure which sets forth the verdicts a jury may return, including, relevantly, a verdict on a lesser included offense, FED. R. CRIM. P. 31(c)(3).  *See Keeble*, 93 S.Ct. at 1995 (noting Rule 31(c) gives defendants "a right to such an *instruction*") (emphasis added).  *See also Beck v. Alabama*, 447 U.S. 625, 635-36 n.11, 100 S.Ct. 2382, 2388 n.11, 65 L.Ed.2d 392 (1980) (Rule 31(c) is "universally interpreted as granting a defendant a right to a requested

8

lesser-included-offense *instruction* if the evidence warrants it") (emphasis added).

Similarly, in ***Walkingeagle***, in extending ***Keeble*** to a court's jurisdiction to sentence a

defendant found guilty of a lesser included offense even though the court had acquitted

him of the greater offense, the Fourth Circuit noted its decision was grounded in section

3242:

> [***Keeble***] turns on the language of § 3242's procedural
> provision that trials under the Act shall be conducted in the
> same way as other federal criminal trials.  Thus, a federal
> court has jurisdiction over a non-enumerated offense if, *as a
> matter of federal trial procedure*, the court is permitted to
> instruct the jury on the lesser-included, non-enumerated
> offense.
>
> . . . .  We believe that when Congress granted jurisdiction
> over major felonies committed by Indians, it granted
> jurisdiction over all offenses included within those felonies to
> the extent that federal trial procedure would allow the jury to
> return a verdict on the lesser offenses.

***Walkingeagle***, 974 F.2d at 553-54 (emphasis in original).

It is not at all obvious – in fact, it is counterintuitive – to suggest that a rule of trial

procedure has any logical relevance to plea bargaining.  "[I]t is a fundamental precept of

federal constitutional law that a 'court cannot permit a defendant to be tried on charges

that are not made in the indictment.'"  ***Hunter v. State of New Mexico***, 916 F.2d 595,

598 (10th Cir. 1990) (quoting ***Stirone v. United States***, 361 U.S. 212, 217, 80 S.Ct. 270,

273, 4 L.Ed.2d 252 (1960)), ***cert. denied***, 111 S.Ct. 1693 (1991).  Thus, the court's

jurisdiction to try an Indian defendant must be derived from one of the crimes

enumerated in the Major Crimes Acts.  ***See Walkingeagle***, 974 F.2d at 553.  While

under ***Keeble*** an Indian defendant who has been tried in federal court is entitled to a

lesser included offense instruction, such an instruction is only warranted if, "in practical

terms," the evidence developed at trial supports it.  *United States v. Pino*, 606 F.2d 908, 916 (10th Cir. 1979).  At that juncture, when the evidence has been fully developed, and because an Indian is entitled to parity by virtue of 18 U.S.C. § 3242, it might be said that the court's jurisdiction of the greater offense extends to allow it to submit a lesser included offense instruction to the jury.  Thus, the jurisdiction which existed when the case was taken to trial does not rise or fall with the outcome of the verdict.  It is a far, far different matter to suggest that an Indian's right to parity following full development of the evidence at trial authorizes a court to allow him to plead to charges over which the court plainly lacks jurisdiction in the first instance.

The courts which expanded *Keeble* to plea bargaining fail to take adequate consideration of the actual language of the decision.  For the Court in *Keeble* was careful to acknowledge its decision "neither expands the reach of the Major Crimes Act *nor permits the Government to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute*."  *Keeble*, 908 S.Ct. at 1998 (emphasis added).  This affirmation plainly shows the *Keeble* Court's recognition and reaffirmation of the tribes' unimpeded exclusive jurisdiction over crimes not enumerated in the Major Crimes Act.  *See Antelope*, 97 S.Ct. at 1397 n.1 (Major Crime Act is a "carefully limited intrusion of federal power into the otherwise exclusive jurisdiction of the Indian tribes to punish Indians for crimes committed on Indian land") (citation and internal quotation marks omitted).  The Court's unequivocal language plainly counsels restraint in intruding further on the exclusive jurisdiction of the tribes. It thus is not clear how any court could conclude that allowing a defendant to plead to a lesser included offense not enumerated in the Major Crimes Act "would not be held to

10

be an undue extension of federal authority."  *Morgan*, 2014 WL 1871861 at *7.

Nor do these decisions account for the language of the Major Crimes Act itself. The Act specifically provides that Indians "shall be subject to the same law and penalties as all other persons committing any of the above offenses*, within the exclusive jurisdiction of the United States*."  18 U.S.C.A. § 1153(a) (emphasis added). Although the comma might be thought to create some doubt about the matter, the only interpretation of this clause that makes sense is one in which the clause "within the exclusive jurisdiction of the United States" refers to and modifies the noun "offense." The reference in the following subsection to "[a]ny offense referred to in subsection (a) of this section" confirms that interpretation.  This language plainly underscores the limits of federal jurisdiction as to these crimes and the continuing deference they evidence for the tribes' exclusive jurisdiction as to all other crimes.[8]

---

[8]  I note that, with the agreement of the tribe, Congress has granted jurisdiction to certain states over crimes committed by Indians against Indians in Indian Country occurring within their borders. *See Negonsott v. Samuels*, 507 U.S. 99, 102-03, 113 S.Ct. 1119, 1121-22, 122 L.Ed.2d 457 (1993). *See also* 18 U.S.C. §§ 1162(a) & (c); 25 U.S.C. §§ 1321(a)(1) & 1326; *Burch*, 169 F.3d at 669.  Yet even in these "Public Law 280" states, the tribe is not divested of its continuing law enforcement authority to charge, try, and convict members of the tribe for violations of tribal law.  *See, e.g., TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676, 685 (5th Cir. 1999); *Confederated Tribes of the Colville Reservation v. Superior Court of Okanogan County*, 945 F.2d 1138, 1140 n.4 (9th Cir. 1991); *Walker v. Rushing*, 898 F.2d 672, 675 (8th Cir. 1990).  *See also Mille Lacs Band of Ojibwe v. County of Mille Lacs, Minnesota*, 2023 WL 146834 at *29 (D. Minn. Jan. 10, 2023) (concluding *Oklahoma v. Castro-Huerta*, – U.S. –, 142 S.Ct. 2486, 213 L.Ed.2d 847 (2022), did not hold that Public Law 280 overrides tribe's interests in self-government), *appeal filed*, 2023 WL 146834 (8th Cir. Feb. 8, 2023) (No. 23-1257), *and appeal filed*, 2023 WL 146834 (8th Cir. Feb. 9, 2023)  (No. 23-1265), *and appeal filed*,  2023 WL 146834 (8th Cir. Feb. 9, 2023)  (No. 23-1261).

Of course, Colorado is not a "Public Law 280" state.  *See People v. Luna*, 683 P.2d 362, 364 (Colo. App. 1984).  While Public Law 98-290, § 5, 98 Stat. at 202, grants the state of Colorado exclusive jurisdiction over civil and criminal offenses occurring within the "boundaries of the town of Ignacio, Colorado, and any other municipality which may be incorporated under the laws of Colorado within the Southern Ute Indian Reservation," these crimes allegedly occurred within the exterior boundaries of the reservation.  If they were not, the state of Colorado, not this court, would have jurisdiction.  *See Burch*, 169 F.3d at 669.

In addition, contrary to the *Matheson* court's suggestion, nothing in *Keeble*, section 3242, or the Major Crimes Act supports a conclusion that equal protection necessarily requires an Indian defendant be permitted to plead to a lesser include offense not itself within the court's jurisdiction.[9]  *See Matheson*, 2015 WL 12866995 at *2.  The constitutional calculus is not the same in this specific context as it is more generally.  "It is settled that the unique legal status of Indian tribes under federal law permits the Federal Government to enact legislation singling out tribal Indians, legislation that might otherwise be constitutionally offensive."  *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 500-01, 99 S.Ct. 740, 761, 58 L.Ed.2d 740 (1979) (citation and internal quotation marks omitted).

Instead, jurisdiction is the foundational constitutional principle here.  Indeed, it appears self-evident to this court that the right to bring a viable equal protection claim presupposes a court which has jurisdiction to consider that claim.  I am unwilling to reason my way backwards from a rule of trial procedure to find jurisdiction based on other constitutional concerns (even where applicable) which presuppose the existence of the court's jurisdiction to entertain them.

Nor can I fathom why the government would wish to risk the danger that Mr. English might later challenge the court's jurisdiction to convict him of the crime to which he pled guilty.  That danger is not necessarily hypothetical.  While the Supreme Court

---

[9]  Although the *Keeble* Court noted that precluding a lesser included offense instruction under the Major Crimes Act might raise "difficult constitutional questions," it acknowledged "we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense."  *Keeble*, 93 S.Ct. at 1998.  *See also Cooper*, 812 F.2d at 1285 ("The lesser included offense doctrine has not been held by the Supreme Court to be a component of due process.").

has endeavored in recent years to more clearly distinguish between rules which are truly jurisdictional and those that merely govern claims processing, and therefore may be waived, as first-year law students throughout this country know, "[s]ubject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012). Thus the specter that conviction entered under these circumstances ultimately could be vacated will forever loom over any case in which the court deigns to acquiesce in such an agreement.[10] While Mr. English (or any other defendant) may consider himself lucky to escape more a serious outcome in the short term, there is no guarantee in future he may not wish to expunge this federal conviction from his criminal record or otherwise challenge it, regardless how minor the consequences may seem to him today.

Finally, I note the more practical – but no less real – concern that allowing Indian defendants to plead guilty to crimes not enumerated in the Major Crimes Act implicates possible over-charging by the United States Attorney. The potential for such an invidious result was noted by the government itself in *Keeble*: "The ruling petitioner seeks would . . .empower federal prosecutors, dissatisfied with the leniency of tribal courts, to prosecute in marginal cases, knowing that if the major offense is not proved the penalty for the minor offense would be more substantial than in the tribal courts." *Keeble*, 93 S.Ct. at 1998 n.14 (citation and internal quotation marks omitted). Although the argument there was inapposite, *see id.*, several courts have echoed its underlying

---

[10] Thus, the fact that the appeal and collateral attack waivers contained in the parties' proposed plea agreement here do not exempt jurisdictional defects does not make me sanguine that any conviction entered on this plea might never be subject to challenge. (*See* **Motion App.**, Exh. 1 ¶ I.C. at 3-4.)

concerns.

At least one appellate court, although concluding the court had authority to sentence a defendant on the lesser included offense after trial, nevertheless found "troubling" the possibility of prosecutorial over charging, even in that context. *Bowman*, 679 F.2d at 800. *See also Walkingeagle*, 974 F.2d at 559 (Hamilton, J., dissenting) ("[D]isallowing a lesser included offense charge when the overlying charges under the Act are dismissed before submission to the jury saves the court from the role of amateur psychologist attempting to fathom the motivation of the United States Attorney in bringing the case to determine if deliberate overcharging exists."). In addition, at least one other federal district court noted this same concern (among several of the others I have raised herein) in declining to accept a plea agreement such as the parties here propose. *See United States v. Narcia*, 776 F.Supp. 491, 494 (D. Ariz. 1991) ("Rational or not, there is no authority expressly allowing federal prosecutors to charge Indian defendants with crimes not enumerated in the Major Crimes Act."). Indeed, even as it gave prosecutors the ability to do so, the *Matheson* court acknowledged "that extension of *Keeble* [to plea agreements] could provide incentive for a zealous prosecutor to overcharge a defendant in order to bootstrap jurisdiction." *Matheson*, 2015 WL 12866995 at *3. Given the absence of any basis to extend federal jurisdiction to unenumerated crimes in the context of plea bargains, I find this danger far more worrisome than did the *Matheson* court.

## IV. ORDERS

For these reasons, the magistrate judge did not err in declining to accept the

parties' proposed plea agreement in this case.  The objections accordingly are overruled.

**THEREFORE, IT IS ORDERED** that the objections of the parties [#37 &39] to the implicit recommendation of the magistrate judge rejecting their proposed plea agreement are overruled.

Dated March 2, 2023, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge